## COURT OF APPEALS.
### March 4, 1910.

## THE PEOPLE v. EARL HILL.

### (198 N. Y. 64.)

(1). MURDER—CIRCUMSTANTIAL EVIDENCE SUSTAINING VERDICT.

The record upon the trial of a defendant jointly indicted with another, but tried separately, for murder in the first degree, examined and *held*, that while the evidence of defendant's guilt is entirely circumstantial, it is sufficient to fully warrant the verdict of guilty found by the jury, who were permitted to find him guilty either on the theory that he actually personally killed the deceased or that he acted in concert with, and aided and abetted an accomplice, indicted with him, who directly caused the death.

(2). SAME—CONFESSION.

The fact that defendant, before making a confession, was not advised concerning his right to consult counsel is immaterial where he was not induced to speak through threats or promises, and it appears that he was advised that whatever he said might be used against him.

(3). SAME—EVIDENCE OF BURGLARIES COMMITTED A FEW DAYS BEFORE THE HOMICIDE.

It was not erroneous on the trial of such defendant to receive evidence of two burglaries charged to have been committed by defendant in connection with his accomplice in the homicide a few days before the homicide, where such evidence was offered for the purpose of showing his connection with three revolvers taken on that occasion, one of which was found in the hand of deceased, where it had been placed to create the inference that he had committed suicide, another of which had been given by defendant to a woman shortly after the murder, and the third was found hidden in a cellar in which defendant had been seen a short time after the murder, and with one of which the murder was committed.

(4). SAME—EVIDENCE OF FINDING KEYS BELONGING TO DEFENDANT NEAR THE PLACE WHERE HOMICIDE WAS COMMITTED.

It seems that it was not erroneous to allow in evidence a bunch of keys with a tag bearing defendant's name which were found a few

days after the homicide at a point near the place where it was committed and where the defendant and his accomplice are supposed to have waited to attack the deceased, although no evidence other than the tag was given of the ownership of the keys. The only purpose of the evidence was to show that detendant was in the locality of the homicide, and in view of the other evidence on this point it is not probable that the result would have been changed even if this evidence had been held erroneous and omitted.

APPEAL from a judgment of the Supreme Court rendered May 6, 1909, at a Trial Term for the county of Chenango upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*William H. Sullivan,* for appellant. The trial court erred in admitting testimony tending to show that, prior to the commission of the crime charged, this defendant had committed the crime of burglary. (*Peo. v. Montgomery,* 176 N. Y. 219; *Peo. v. McLaughlin,* 150 N. Y. 365; *Peo. v. Gibbs,* 93 N. Y. 470; *People v. Fiorentino,* 197 N. Y. 560; *People v. Flannagan,* 42 App. Div. 318). The trial court erred in admitting testimony a to the admissions and alleged confession of this defendant while under arrest, unattended by counsel, and not having been previously informed of his rights. (*People v. Mondon,* 103 N. Y. 211; *People v. McMahon,* 15 N. Y. 384; *People v. Phillips,* 42 N. Y. 200). The trial court, in his charge to the jury, did not give a fair and impartial presentation of the facts and the law applicable thereto in defining the degrees of murder and the principles governing the same. (*People v. Barberi,* 149 N. Y. 256; *People v. Brow,* 90 Hun, 509; *People v. Gorman,* 83 Hun, 605; *McKenna v. People,* 81 N. Y. 360; *Allison v. United States,* 160 U. S. 203; *People v. Chartoff,* 75 N. Y. Supp. 1088; *People v. Weisenberger,* 73 App. Div. 428). The trial court erred in admitting testimony in relation to the

identity of the watch. (*Wallace v. S. R. T. R. Co.,* 42 App. Div. 536; *McLoghlin v. N. M. V. Bank,* 139 N. Y. 514; *Link v. Sheldon,* 136 N. Y. 1; *Whintringham v. Dibble,* 66 N. Y. 634). The trial court erred in admitting in evidence the keys found eighteen days after the crime is alleged to have been committed. (*People v. Montgomery,* 176 N. Y. 219).

*James P. Hill, District Attorney,* for respondent. The testimony in regard to a previous burglary was competent and proper. (*People v. Rogers,* 192 N. Y. 331; *People v. Shea,* 147 N. Y. 78; *People v. Sharp,* 107 N. Y. 427; *People v. McLaughlin,* 150 N. Y. 365). The evidence of witnesses as to statements made by this defendant on the morning of the arrest were properly admitted in evidence. (*Cox v. People,* 80 N. Y. 515; *People v. Mondon,* 103 N. Y. 211; *People v. White,* 176 N. Y. 331; *People v. Scott,* 195 N. Y. 224; *People v. Kennedy,* 159 N. Y. 346; *People v. Myer,* 162 N. Y. 366; *People v. Cassidy,* 133 N. Y. 612).

HISCOCK, J.:

The defendant was jointly indicted with one Borst for murder in the first degree in causing the death of one Davis and thereafter on a separate trial convicted of the crime.

While the evidence of defendant's guilt was entirely circumstantial, I think that it was sufficient to fully warrant the verdict which was found. The jury were permitted to find him guilty either on the theory that he actually personally killed Davis or that he acted in concert with and aided and abetted Borst, who directly caused the death. I shall briefly state some of the important facts which were developed on the trial tending to prove the defendant's guilt.

Davis was a farmer living in the town of Bainbridge, county of Chenango. The defendant Hill, who at the time of the

alleged crime on August 26, 1908, was a young man nineteen or twenty years of age, had worked for Davis, and, therefore, was acquainted with his farm and with his habits. In the neighborhood of four o'clock on the afternoon of the day mentioned, Davis started for a somewhat distant and secluded portion of his farm for the purpose of gathering in some cows and in the evening he was found by a searching party with several bullet holes in his body and evidently having been dead for some time. The defendant and Borst, who was a little older than he, had been seen together more or less before the day of the homicide. At about five o'clock in the afternoon of that day they came to Davis' house and there made some inquiries of his wife concerning her husband and made some suggestions calculated to excite her anxiety about his whereabouts, the inference being, especially in view of a statement subsequently made by defendant, that they desired to get her away from the house for the purpose of burglarizing the latter. Subsequently and at about six o'clock the two men were seen running in a direction leading from the spot where Davis was found, and there is evidence that before both of the events last narrated shots had been heard in the locality where Davis met his death. While a revolver had been placed in one of the hands of the deceased, presumably for the purpose of creating a belief of suicide, there was no evidence and really no suggestion on the trial that his death was the result of anything other than deliberate murder. A few days before the murder two houses not far distant from the locality had been burglarized and amongst other things three revolvers taken therefrom, and the evidence, including his own statement, indicated that defendant had taken part in these burglaries. One of the revolvers thus stolen was the one found in the hand of the deceased; another one was given by the defendant to a woman shortly after the murder, and the third one was subsequently discovered hidden in a cellar near which

defendant had been seen shortly after the murder. A watch which belonged to and was carried by the deceased at the time of his death was subsequently pawned at a village not far away, and the defendant identified as the person who had pawned it and a pawn ticket taken from his possession after the murder identified as the one which was given for the watch. In addition to these facts and others of less importance fairly well established by the evidence, there was testimony of admissions made by the defendant a few days after the murder to a group of people, including some police officers, and still later to persons confined in the jail with him, which tended to establish his connection with the murder, although it is to be stated that in the first and more reliable confessions he took the position that Borst did the shooting without his procurement.

Defendant attempted to establish irrational acts on his part at times preceding the murder, and although this evidence was scarcely sufficient to create a conjecture that he might be irresponsible that question was submitted to the jury.

On this appeal the defendant's counsel does not contend that the evidence produced did not fairly justify the jury in finding him guilty as they did or that their verdict with any reason can be said to be against the weight of evidence. He simply argues that various erroneous rulings were made in respect to the introduction of evidence and that the charge was not a proper one. Therefore, without more discussion of the facts I shall proceed so far as they seem to require it to a consideration of the exceptions which are thus pressed on our attention.

As has been stated, three or four days after the homicide and after he had been taken into custody defendant made confessions to several people including some police officers. He was encouraged to make these statements by his father and it is now argued, first, that the latter was influenced by a desire to secure a reward which had been offered for the apprehension

of the murderer, and, second, that before making his statements the defendant was not sufficiently advised in regard to his rights to counsel, etc. The criticisms of these confessions made by defendant's counsel are based rather on assumptions than on any actual facts. I find nothing to indicate that the father had any such unnatural motive as is ascribed to him, but the reasonable inference seems to be that thinking his son was under suspicion he advised him to tell what he knew about the affair with the expectation that he would clear himself or at least better his situation. It is true that before making his confessions the defendant was not advised concerning his rights to counsel, but there is no pretense that he was induced to speak through threats or promises, but on the other hand, it clearly appears that he was advised that he need not talk unless he chose to and that whatever he said might be used against him. I cannot see that any legal rights of the defendant were infringed and the presence of the father and the character of the statements made by him are opposed to the idea that he was led or crowded into making any involuntary damaging statements.

It is contended that grave error was committed in permitting evidence to be given of two burglaries charged to have been committed by the defendant, in connection with Borst, a few days before the homicide. While it is possible that the evidence dealt with an enumeration of the articles taken beyond what was necessary, it was entirely competent for the district attorney to prove that these burglaries took place and that defendant was connected with them for the purpose of showing his connection with the three revolvers, one of which was found in the dead man's hand after his murder, and with one of the others of which the shooting is assumed to have been done. The theft by defendant either alone or in connection with Borst and consequent possession of a revolver subsequently found at the place of the murder certainly tended to show de-

fendant's presence there, and his disposition of the other two revolvers, with one of which the shooting had been done, was an important link in the chain of evidence.

Error is alleged in connection with the admission of certain evidence by a watchmaker offered for the purpose of identifying the watch claimed to have been pawned by the defendant as the one which had belonged to the deceased. As I read this evidence, however, I think it is of very little materiality especially in view of that given by the wife of the dead man in identification of the watch, and that no error was here committed which requires reversal.

Some days after the homicide at a point near where it was committed and where defendant and Borst are supposed to have waited for Davis, a bunch of keys was found with a tag bearing the defendant's name, and although no evidence other than this tag was given of the ownership of the keys, they with the tag were allowed in evidence. This evidence presents the most debatable question urged upon our consideration. There may be some doubt whether the evidence was properly admitted. But even if it be assumed that it was improperly received, I do not think that this error was of sufficient gravity to call for a reversal of the judgment. The only purpose of the evidence was its tendency to establish that defendant was in the locality of the homicide, and there was so much other evidence on this point as really to leave no doubt. I cannot believe that if this evidence had been omitted it would have changed the verdict, or that if a new trial were granted and this evidence on another trial kept from the jury the result thereby would be changed. This being so, it is of course our duty to disregard the error, assuming that one was made.

Lastly, complaint is made in somewhat general terms of the charge under which the case was submitted to the jury, but there is no foundation whatever for this. The learned trial

judge, with much completeness and definiteness, defined to the jury the different degrees of murder and manslaughter, and as already stated indicated the different theories on which the defendant might be found guilty either as having himself shot Davis or having counseled with and abetted his companion in performing this act. He also charged upon the subject of defendant's responsibility for his acts under the purported evidence given concerning irrational conduct, and in short most fairly, and without a single exception being taken, covered in his main charge the questions which were involved. Then after this was concluded he charged all of the defendant's many requests, some of which, in our opinion, were more favorable to the latter than he was entitled to.

No exceptions were taken, or well could be taken, and I feel sure that all of the defendant's rights were amply protected at this point of the trial.

The judgment of conviction must be affirmed.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and WERNER, JJ., concur; GRAY, J., absent.

Judgment of conviction affirmed.