STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

LUTHER A. CANTRELL,

*Defendant and Appellant.*

(No. 2370; November 18th, 1947; 186 Pac. 2d. 539)

134

For the Defendant and Appellant there was a brief and oral argument by Mr. G. R. McConnell of Laramie, Wyoming.

For the Plaintiff and Respondent there was a brief by Norman B. Gray, Attorney General, John S. Miller, Deputy Attorney General and Frank M. Gallivan, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Miller.

## OPINION

RINER, Chief Justice.

This case is a direct appeal proceeding brought by Luther A. Cantrell, defendant and appellant, to obtain the review of a record which resulted in a judgment and sentence against him by the district court of Albany County. The record in that court was initiated by the filing therein by the County and Prosecuting Attorney of a verified information charging Cantrell as defendant with the crime of manslaughter. Omitting the formal parts and the allegations of time and place, this information stated that Luther Cantrell "did unlawfully kill Charles Frederick Winchell, a human being, contrary to the form of the statute" etc. The defendant had previously been arrested and was in due course admitted to bail.

Briefly, the facts upon which this charge was filed were that on the 21st day of October, 1945 Cantrell

had driven his Chevrolet truck weighing approximately a ton and a half, its body loaded with loose apples which he had purchased in the Grand Valley of the State of Colorado for subsequent sale, from Rawlins, Wyoming to a point on U. S. Highway No. 30 nearly one mile south of Bosler—a total distance of about 100 miles. At this point he attempted to pass a Dodge sedan car made over into a pick up truck driven by Winchell, both vehicles traveling in a southerly direction. The Dodge truck at the time was proceeding well over on its own side, the westerly half, of the highway, Winchell being an elderly man, 78 years old, and a slow, careful driver. The defendant stated as a witness in his own behalf in explanation of the accident which occurred on the highway at this place:

"Just as I came up on the car and started to go around him, you know, started to pass him, the right tire blew out. When it did, it throwed me right into him just that (snapping fingers) quick."

There was other testimony, however, that the collision between the two trucks was caused by the Cantrell vehicle striking that driven by Winchell in the rear so that the impact of the two cars was on "the inside of that rim" i. e. on the inside of the right front tire of Cantrell's car, the left wheel track of that truck being on the center line of the road and the other wheel track being over towards the Winchell Dodge pick up. The front of the Cantrell truck was severely damaged and the Winchell car was wrecked, as one witness put it "it was practically a total wreck".

The testimony of A. W. Wheeler, a Wyoming Highway patrolman who had seen ten years of service as such is instructive in this connection. As a witness for the State he testified: That he arrived at the scene of the accident shortly thereafter at 4:10 P. M. on October 21st, 1945; that the weather was "perfect"; that the road at this point was level with 26 feet width of oiled

surface for travel, six feet of solid shoulder that was level with the oiled surface making a total width of the road from shoulder to shoulder for highway travel of 38 feet; that the flange that held the tire on the right front wheel of Cantrell's truck had been hit by the frame of the Winchell car and knocked it back; that the tire on that wheel was cut out and the spring hanger was broken so that it allowed the front wheel to go clear back to the cab of the truck and that pulled the left front tire into the frame of Cantrell's vehicle and cut it out also; that the marks are on the tires and the witness knew "positively there was no flat tire on the Cantrell truck prior to the impact"; that marks left on the road by the two cars showed that the left wheel of the Winchell car was three feet over on the right hand side of the center of the highway's oiled surface; that his truck was hit so hard in the rear and on an angle that it pushed the body around and pulled the left front wheel off the Winchell car; that that car had its axle stripped off and was knocked a distance of 90 feet and it upset in the borrow pit on its side; that the frame of the Winchell car was buckled up in the center; that being hit in the rear just made it arch up; that the tie rod of the Cantrell car was not broken but the drag link was; that previous to the impact, Cantrell's car had been entirely off the oiled surface and upon the shoulder of the highway; that Cantrell told the witness he had been on an all night party in Rawlins, had had a drink of whiskey in Rock River on the way from Rawlins and at the time the witness saw him he was under the influence of liquor and witness detected the odor of intoxicating liquor on Cantrell's breath.

On cross examination the same witness said that neither of the two front tires of the Cantrell truck blew out; they were cut out; that the right front tire was cut on its inside; that the wheel immediately started

taking dips out of the road with the rim after the impact; that prior to that time there were no rim marks. Other witnesses gave substantially similar testimony.

In addition there was testimony given by a number of witnesses for the State, people who were driving on the highway at the time and who had stopped and gathered at the scene of the accident and who had abundant opportunity to observe Cantrell shortly after the two cars had collided, that Cantrell was then staggering; that he could not talk plainly; that he was stammering and stuttering; that they could smell alcohol on his breath and that he was drunk; that he was at that time under the influence of intoxicating liquor. A practicing physician and surgeon of the city of Laramie to whom Cantrell was taken for examination as to injuries approximately three or four hours after the accident happened, also gave testimony as a witness for the State that at that time Cantrell was "inaccurate in his movements, unsteady in the stance, moving in a weaving kind of a way"; that "there was no external mark of any injury whatsoever" on Cantrell's body although he complained of a soreness in his chest; that Cantrell's staggering gait, dilation of eye pupils which were sluggish in their reaction, inaccurate movements, were in the doctor's opinion "the result of over indulgence of alcohol".

The consequence of the impact of the two vehicles was that both of them left the highway which was there raised above the adjacent terrain and, as before stated, both went into the borrow pit on the right hand side of the highway. The Cantrell truck remained upright on its own wheels but the Winchell vehicle toppled over on its side. The Chevrolet truck stopped 125 feet south and west of the Dodge pick up. One witness stated after examining the tracks left on the highway by the two cars and taking measurements that the Cantrell truck went about 240 feet after the collision

while the Winchell truck went 75 feet before it left the road; that during that 75 feet it left indications on the highway that it was going sidewise.

After the collision Winchell was taken out of the Dodge truck critically injured. An ambulance was called and he was taken to a hospital in Laramie distant about 17 or 18 miles. The physician and surgeon who attended him at that institution stated that Winchell died on November 4, 1945 as a result of "complications following his injuries and lacerations of the head, neck and chest"; that he had a "deep laceration of the head extending through the larger vessels of the neck causing a considerable loss of blood"; that this wound at its deeper portion was probably one and a quarter inches to a half an inch.

At the conclusion of the trial in the district court, the jury returned a verdict of guilty "as charged in the information", with a recommendation for leniency. Upon this verdict the court entered its judgment and sentence that defendant serve a term in the Wyoming State Penitentiary of not less than 1½ nor more than 2½ years.

Other facts necessary to be considered in disposing of the contention made by the State and the appellant will subsequently be mentioned.

The claim appears to be made by appellant that the information quoted above as filed by the County and Prosecuting Attorney of Albany county "does not state facts sufficient to constitute the crime of manslaughter in the light of the evidence and the law applicable thereto". This contention must be viewed in connection with the further claim by appellant that Section 60-413 W. C. S. 1945 (Section 24 of Chapter 126 Laws of Wyoming 1939) repealed Section 32-205 W. R. S. 1931 which has been carried forward and is

set forth in Section 9-205 W. C. S. 1945. The statute last mentioned reads:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

Section 60-413 supra uses this language:

"(a)    When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(b)    Any person convicted of negligent homicide shall be punished by imprisonment for not more than 1 year or by fine of not more than One Thousand ($1,000.00) Dollars, or by both such fine and imprisonment.

"(c)    The Superintendent shall revoke the driver, operator, or chauffeur licence of any person convicted of negligent homicide."

There can be no doubt at all that the information charged the crime of manslaughter properly for Section 33-417 W. R. S. 1931, now Section 10-705 W. C. S. 1945 provides that: "In any indictment for manslaughter, it shall be sufficient to charge that the defendant did unlawfully kill the deceased." The provisions of the Code of Criminal Procedure relative to charging a crime by indictment of course apply as well to prosecutions by information. Section 10-613 W. C. S. 1945 (W. R. S. Section 33-431). In State vs. McComb, 33 Wyoming 346, 239 Pac. 526 this court held that an information couched in practically identical language with that used in the case at bar was sufficient without setting out the facts by which the unlawful killing was

accomplished despite the contention that such facts should have been alleged.

The query arises then—Was the entire manslaughter statute (Section 32-205 W. R. S. 1931, Section 9-205 W. C. S. 1945 supra) repealed by Section 24, Chapter 126 Laws of Wyoming 1939 (Section 60-413 W. C. S. 1945) as asserted by appellant? In the case of Snyder vs. McCracken, 34 Wyoming 349, 244 Pac. 135 this court said:

"the rule is too well known to require citation of authorities, that repeals by implication are not favored." See also Ex Parte Brugneaux, 51 Wyoming 103, 63 Pac. 2d 800; Waters vs. State, 75 Okla. Crim. Rep. 185, 129 Pac. 2d 863.

Citing extended lists of cases from many appellate courts, 16 C. J. 69, Section 33 says that:

"A penal law may, like any other statute, be repealed either expressly or by necessary implication; and such a statute is repealed by implication if a later statute is so repugnant to the earlier one that the two cannot stand together, or if the whole subject of the earlier statute is covered by the later one having the same object, and which was clearly intended to prescribe the only rules applicable to the subject. A repeal by implication, however, is not favored, and if by any reasonable construction the two can stand together in full force, or if the latter is merely affirmative or cumulative, or auxiliary and not inconsistent, there is no repeal. In order that two penal statutes may be repugnant, they must relate to the same subject; in other words, where each statute is directed against a distinct offense, there can be no repugnancy, and no repeal. Furthermore it is necessary to the implication of a repeal that the objects of the two statutes be the same, and if the objects are not the same both statutes will stand, although they refer to the same subject."

And as the text last quoted points out also in the last sentence of the cited section "the fundamental test in all cases is the intention of the legislature."

Additionally the Wyoming Territorial Supreme Court in Haines vs. Territory, 3 Wyoming 167, 13 Pac. 8 pointed out that:

"It is a fundamental principle that a statute which is in effect a limitation upon a general act limits the general act only so far as the words of the limiting statute go. In other words, where there is a general act creating and punishing an offence, which may be committed in a number of ways, and another statute prescribing a particular punishment for that offense, when committed in a particular manner, such offense, unless committed in such particular manner, is subject to punishment under the general act; and it is equally true that a penal statute must be construed strictly."

There a general statute relative to obtaining property on credit by false pretenses was held to be limited by another statute which provided punishment for the offense of obtaining goods upon credit by the representation in writing of the party himself as to his responsibility or by his procuring others to make the representations for him, only so far as the words of the latter went, and left the punishment of offenses not included for punishment under the general act.

With the above rules in mind it is plain that Section 24, Chapter 126 Laws of Wyoming 1939 did not repeal in toto Section 32-205 W. R. S. 1931 supra. Section 24 aforesaid fails to deal with not only the inhibition of the statute concerning voluntary manslaughter but also the ban of the law upon involuntary manslaughter "in the commission of some unlawful act". It is not repugnant to either of these provisions. See also Phillips vs. State 204 Ark. 205, 161 S. W. 2d, 747.

Under both the proofs as briefly reviewed above and the instructions of the court in the case at bar, it is clear that the prosecution was grounded on that clause in the manslaughter statute prohibiting the killing of a human being in the commission of an unlawful act.

So far as pertinent, Section 25 of Chapter 126, Laws of Wyoming, 1939 as amended by Chapter 66, Laws of Wyoming 1941 (Section 60-414 W. C. S. 1945) provides that:

"(a)   It is unlawful and punishable as provided in subdivision (b) of this Section for any person who is a habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any motor vehicle within this State.

"(b)   Every person who is convicted of a violation of this Section shall be deemed guilty of a misdemeanor." And Section 75, Chapter 126, Laws of Wyoming 1939 as amended by Chapter 87, Laws of Wyoming 1941 (Section 60-701 W. C. S. 1945) supplies the penalty for such misdemeanor, that law declaring in part that:

"Every person convicted of a misdemeanor for a violation of any of the provisions of this Act for which another penalty is not provided shall upon conviction thereof be punished by a fine of not more than One Hundred ($100.00) Dollars, or by imprisonment for not more than 10 days;"

It may be appropriately noted here that in defendant's motion for a new trial filed December 23, 1946 claiming error by the district court in the course of the trial of the case in that the court allowed numerous witnesses to testify "that the defendant was drunk and under the influence of intoxicating liquor" it was expressly stated that this fact "was the primary and sole issue in the case".

It is to be observed that the penalty of involuntary manslaughter may be incurred by the unlawful killing of a human being in the commission of an unlawful act "*or* by any culpable neglect or criminal carelessness" (italics supplied). The disjunctive "or" may not be overlooked. Whether Section 24 of Chapter 126, Laws of Wyoming, 1939 which may shortly be referred to as the Negligent Homicide Act repeals the provision of the manslaughter statute immediately following the

disjunctive "or" and quoted above in this paragraph or whether both statutes shall be deemed operative as dealing with separate matters and so both should stand intact, we do not find it necessary at this time to decide.

The evidence relative to defendant's driving his truck while "under the influence of intoxicating liquor" and so the death of Charles Frederick Winchell ensued as a consequence thereof is, aside from defendant's denials, if not practically undisputed, at the very least, clearly contradictory. Under such circumstances, the governing rule is, to use the language employed in State vs. Weekley, 40 Wyoming 162, 275 Pac. 122:

"The credibility of the witnesses and the conflicts in their testimony were, of course, problems peculiarly to be resolved by the jury. Having found against defendants in those respects upon supporting evidence in the record, we cannot, under familiar rules of appellate practice, interefere with their verdict."

So 24 C. J. S. 809-815, Section 1881 with a wealth of supporting citations says:

"It is within the province of the jury, or of the trial court sitting without a jury, to weigh and resolve conflicting evidence * * * and ordinarily the appellate court may not determine the credibility of such evidence, particularly under statutes making the jury judges of fact.

"The presumption is in favor of the verdict * * * and the appellate court will not interfere when the evidence is conflicting if there is material evidence tending to support the verdict, although it may differ from the jury as to the preponderance of the evidence; the verdict ordinarily is binding and conclusive on review; the verdict settles any conflict in the evidence; the reviewing court will not invade the province of the jury; and the appellate court will not substitute its judgment for the judgment of the jury."

It must be taken as established that there is material evidence in the record supporting the verdict that the

death of Charles Frederick Winchell ensued as a consequence of Cantrell's being engaged in the commission of an unlawful act, namely, driving a vehicle while "under the influence of intoxicating liquor".

If we assume that Section 24 of Chapter 126, Laws of Wyoming, 1939 did replace that clause of the manslaughter statute following the disjunctive "or" it does not seem to affect the theory or involve the proofs upon which the case was tried in the district court. The legislative intent as to the manslaughter statute in enacting the Negligent Homicide Law might well be clarified by that body especially when we find that Section 2 of Chapter 56 Special Session Laws of Wyoming 1933 (now Section 60-138 W. C. S. 1945) also says in part: "if any person operating a motor vehicle in violation of the provisions of this article shall, by reason thereof, seriously maim, injure or disfigure or cause the death of any person or persons, such person shall be deemed guilty of a felony, and upon conviction shall be imprisoned in the penitentiary for not less than one year nor more than fourteen years."

In this connection we may remark that in addition to the principle that courts do not favor repeals by implication ,50 Am. Juris. 556 Section 551 commenting on the interpretation of statutes and repeals by implication says:

"The general principle of interpretation, that the mention of one thing implies the exclusion of another (expressio unius est exclusio alterius), has been regarded as applicable where an act makes substantive provisions and then expressly repeals specified acts, so as to repel an inference that acts not specified are impliedly repealed."

See also Wood vs. United States, 16 Peters (U. S.) 342, 10 L. Ed. 987. Relative to that statement of the principles or rule of interpretation of statutes given in the text last cited, mention may be made that Chapter 126, Laws of Wyoming, 1939 which contains its Section

24 supra, the Negligent Homicide Act also contains as its concluding Section, Section 86 which expressly repeals stated sections of the Wyoming Revised Statutes but is altogether silent as to Section 32-205, the general manslaughter statute.

The most elaborate review of the subject of Negligent Homicide as applicable to motor vehicle codes which has come under out notice is included in an article by Stefan A. Riesenfeld in 25 Cal. Law Rev. pp. 1-40. There the author discussing the operation of the Negligent Homicide law in the State of Michigan, which was the first jurisdiction to establish the crime of negligent homicide committed in the operation of a vehicle, points out that:

"There was at common law and there is apparently in Michigan another group of cases, constituting manslaughter, where the issue of negligence is not involved at all, namely, homicide in the commission of an unlawful act (malum in se) not amounting to felony. The typical example is driving while under the influence of liquor. This is a crime in all jurisdictions; in Michigan it is a misdemeanor. Hence if death results the driver is guilty of manslaughter. The Michigan court in the famous case of People v. Townsend, (People v. Townsend (1921) 214 Mich. 267, 183 N. W. 177, 16 A. L. R. 902.) which is the leading case in this field, succinctly pointed out that driving while intoxicated is an unlawful act (malum in se) and that if death results the driver is guilty of manslaughter."

This article also considers the California law on the subject but it was written too soon (1936) to deal with the action of the California legislature on the subject in 1943. In that year the earlier section of the Vehicle Code (Section 500) was repealed by that body through an act which is quoted in People vs. Ely, 71 Cal. App. 2d 729, 163 Pac. 2d 453 where the court said:

"In 1943 the Legislature expressly repealed this entire section of the Vehicle Code and by the same act (Stats.

1943, Chap. 421, p. 1959) section 193 of the Penal Code was amended. Chapter 421 reads as follows: 'Section 1. Section 500 of the Vehicle Code is repealed. Sec. 2. Section 193 of the Penal Code is amended to read: 193. Manslaughter is punishable by imprisonment in the State Prison for not exceeding 10 years, except that a violation of subdivision 2 of Section 192 of this code resulting from the operation of a vehicle is punishable by imprisonment in the county jail for not more than one year or in the State Prison for not more than five years.' The Legislature did not, however, at that session re-enact Penal Code section 192 or otherwise redefine the offense of manslaughter."

The court further remarked:

"Section 500 of the Vehicle Code, as originally adopted in 1935, St. 1935, p. 173, defined an offense distinct and different from that of involuntary manslaughter. The original test of culpability as to the Vehicle Code offense of negligent homicide was whether ordinary care was exercised. The test applicable to the Penal Code offense of manslaughter was whether due caution and circumspection were exercised. People v. Pociask, 14 Cal. 2d 679, 96 P. 2d 788; People v. Beckhard, 14 Cal. 2d 690, 96 P. 2d 794; People v. Amick, 20 Cal. 2d 247, 125 P. 2d 25. A prosecution under either section was permissible, and it has been intimated that a prosecution and acquittal under one would not place the accused in jeopardy as to the other. People v. Amick. supra; People v. Crow, 48 Cal. App. 2d 666, 120 P. 2d 686. The two statutes were neither repugnant to nor inconsistent with each other; they were in pari materia."

In 1945 the definition of manslaughter as a penal offense was revised by that legislature and in People vs. Mitchell, 27 Cal. 2d 678, 166 Pac. 2d 10 the subject of negligent homicide was considered in connection therewith. It was there held that a person committed "an unlawful act" within the meaning of the California Involuntary Homicide Statute if he violated speed laws designed to prevent injury to the person and the transgressor was guilty of involuntary manslaughter if death was caused by the act. And in the even later

case of People vs. Barnett — Cal. App. 2d —, 175 Pac. 2d 237, both the provisions of the penal code Section 192 (the manslaughter statute) and the section 476 and 450 of the Vehicle Code which made violations of traffic signals a misdemeanor were before the court and it was held that where a motorist who drove his truck into an intersection against a red traffic signal in violation of the Vehicle Code provisions and collided with an auto proceeding across the intersection on a green light and thereby caused the death of the occupants of the auto, the truck driver was guilty of involuntary manslaughter.

During the course of the trial as we have seen, a number of witnesses were allowed to testify that in their opinion the defendant was drunk, giving the facts they observed as a basis of their testimony in that respect. The trial court ruled that:

"the witnesses may testify as to the defendant's intoxication, providing they state the facts on which they base this opinion."

and to this ruling the defendant excepted and error is assigned thereon.

20 Am. Juris. 737, Section 876 says that:

"It is well established, therefore, that a witness who has had opportunity to observe the facts upon which he bases his opinion may give his opinion as to whether the person was intoxicated at the particular time in question. Of course, actual observations on the part of the witness are the essential basis of his opinion on intoxication, and, in the usual and regular course, such facts must be proved as a foundation. The better practice is for the witnesses to describe the actions and conduct of the party and then give their opinions as to whether he was intoxicated, although it is generally recognized that they may give their opinions upon this matter without describing the actions and conduct of the person in question."

See also 3 Nichols Applied Evidence 2681; 1 Greenleaf on Evidence (16th edition) 558; Connor vs. State, 91 Fla. 214, 107 So. 360. In Holton vs. Boston Elevated Ry. Co. 303 Mass. 242, 21 N. E. 2d 251 the court said: "While it might not be easy accurately to describe each and every minute detail indicative of intoxication, yet the principal objective symptoms are so well known that witnesses have always been permitted to express their opinion as to the inebriety of a person. Edwards v. Worcester, 172 Mass. 104, 51 N. E. 447; Gorham v. Moore, 197 Mass. 522 ,524 ,84 N. E. 436."

3 Jones Commentaries on Evidence, 2d edition, 2307, Section 1253 similarly says:

"It has been repeatedly held that a nonexpert witness may testify to an opinion that a certain person was intoxicated. As the Alabama court remarks: 'A witness introduced by defendant testified that he saw plaintiff—shortly before the arrest complained of, as the context shows—and that he 'saw he was drunk.' This was excluded on plaintiff's objection. This was error. The indications of drunkenness are commonly known, and we think this statement of the witness was a permissible shorthand rendition of the facts, a statement of collective fact, which defendant was entitled to have submitted to the jury, subject to cross-examination'."

In view of these authorities and others which we have examined too numerous to mention, we perceive no error in the district court's ruling.

Mention has already been made also of the fact that a practicing physician of the City of Laramie testified without objection or exception that symptoms of the defendant when the doctor examined him and which the medical man detailed, were the "result of over indulgence of alcohol". This examination was made three or four hours after the accident occurred. In the cumulative supplement to the cited volume of 20 Am. Juris. p. 50 we find it also stated:

"Inasmuch as it is well established that lay witnesses may testify as to the state of intoxication of one whose conduct and appearance they have observed, the admissibility, in criminal cases, of similar testimony by physicians or other qualified experts, based upon their careful examination of the person's physical condition and appearance and his mental reactions, seems generally to have been conceded."

Complaint is made that witnesses were allowed to testify to statements made by the defendant at the scene of and shortly after the accident when he was not under arrest; also that he answered certain questions propounded by the County Attorney without sufficient or proper warning being given him as to the consequences of responding to these queries. We find no merit in either of these criticisms. The defendant was not placed under arrest according to the highway patrolman until after he had been examined for injuries by the physician and surgeon above referred to at the City of Laramie and defendant's statements made previous thereto are to be regarded as having been voluntarily uttered. Before being interrogated by the County Attorney, the defendant himself testified that that official told him:

"that anything that I would say could be used against me at the trial, and I didn't have to answer any questions if I didn't want to."

In State vs. Morris, 83 Ore. 429, 163 Pac. 567 the defendant being under arrest was warned that:

"he need not answer any questions which were put to him unless he wanted to, but that if he did answer questions which were put to him or made any statements which incriminated himself, they would be used against him."

Concerning this matter the court said:

"The warnings given to the defendant by the sheriff and district attorney before he was questioned in regard to what he knew about the commission of the crime were sufficient to inform him that anything he

said would be used against him; and the information that he had a right to refrain from making any statement overcomes any possible inference of duress that might otherwise be drawn from the form or manner of the interrogatories that were propounded to him."

See as in accord People vs. Morales 77 Cal. App. 483, 247 Pac. 221; Pinckard vs. State, 62 Tex. Cr. Rep. 602, 138 S. W. 601; Miller vs. State 131 Tex. Cr. Rep. 166, 101 S. W. 2d 235; People vs. Hill, 198 N. Y. 64, 91 N. E. 272; State vs. Thompson 224 N. C. 661, 32 S. E. 2d 24; 16 C. J. 629, Section 1247.

In State vs. Lantzer, 55 Wyoming 230, 99 Pac. 2d 73 the defendant was warned before questioning by the sheriff and county attorney "that anything you say will be used against you" and "you are willing to answer these questions? If you don't want to answer them, why then you can refuse". It was held that the objection on the ground that the statements made in response to the questions propounded were not voluntarily made was properly overruled. Additionally, see State vs. Catellier, 63 Wyo. 123, 179 Pac. 2d 203, 215; Mortimore vs. State, 24 Wyoming 452, 161 Pac. 766. It is quite clear that in the case at bar the trial court ruled correctly on this matter.

The two damaged trucks were placed on one of the streets adjoining the court house to be available for inspection by the jury. After that body had been selected, the court inquired whether the defendant desired to have the jury kept together during the trial of the case and defendant's counsel responding for him informed the court that "he did not desire the jury to be kept together" and as stated in defendant's motion for a new trial, "at no time later in the trial did defendant request that the jury be kept under strict confinement together". At the conclusion of the State's case, the County Attorney suggested to the court that the jury could look at these vehicles if they desired to

do so. Upon objection by the defendant, the jury was promptly told by the presiding judge not to examine them. It is insisted that the jury was prejudiced against the defendant by these circumstances and this is assigned as error. We are unable to see how that is so. Early in the trial it appeared that the vehicles were thus available for examination and if the defendant had requested the court to have them removed from the place where they had been left we have little doubt the court would have ordered them taken away. However, no request appears to have been made to that effect. Further a complete answer to defendant's claim of error on this ground is that the jury upon defendant's request could have been kept together from the very inception of the trial and prevented from observing the trucks at all (Section 10-1315 W. C. S. 1945, Section 33-1001 W. R. S. 1931). Knowing that the jury would separate at the various recesses of the court prior to being charged and that they very probably would see the cars during such intermissions, it is difficult to see that the defendant had any real ground of complaint on this account.

It is said that the County Attorney misbehaved in presenting the argument on behalf of the State to the jury in commenting on the fact that Anderson, the defendant's companion on the trip from Rawlins, was not present at the trial. As a matter of fact the record shows that the State caused a subpoena to issue for Anderson but it was returned December 9, 1946 and before the trial commenced, that proceeding being begun December 18, 1946, that he was "not found in Albany Co. Wyoming". No subpoena appears to have been sought for Anderson thereafter by the defendant. Among the many reasons why this contention should not be regarded as of force is the fact that no timely objection or exception seems to have been taken to the action of counsel for the State so far as the record of the trial

discloses. The complaint on this point is not even embodied in the defendant's motion for a new trial. See Marcante vs. Hein, 51 Wyoming 389, 402, 67 Pac. 2d 196; Pullman vs. Finley, 20 Wyoming 456, 125 Pac. 380. The affidavit of defendant's counsel filed apparently after the court had ruled adversely on the motion for a new trial is the only way in which the matter seems to have been called to the attention of the court. There appears to have been no request for an instruction by the court admonishing the jury to disregard counsel's remarks and so far as appears, the court may have acted forthwith and cured any error, if error there was.

Some other points are suggested on appellant's behalf. We have examined them all and consider that they are insufficient to demonstrate prejudicial error is shown by the record before us. We think that the evidence was amply sufficient to sustain the jury's verdict and it and the judgment rendered upon it are not contrary to law. Accordingly the judgment and sentence of the district court of Albany County should be and are affirmed.

*Affirmed.*

KIMBALL, J., concurs.

BLUME, J. (Concurring specially).

I concur in the rulings of the foregoing opinion, but do so with considerable hesitancy on the questions as to whether or not the defendant should have been charged with involuntary manslaughter. As pointed out in the opinion, we have now three different statutes dealing with the killing of a human being as the result of unlawful driving of an automobile—the manslaughter statute and two special statutes. It is impossible to determine definitely as to whether or not the legislature when it passed these special statutes intended that they should govern in all cases when a death occurs as the

result of improper driving of an automobile. Particularly is this true in view of the rule that repeals by implication are not favored. Nor is it even possible to determine definitely which of these special statutes should govern. Section 10-703, Wyoming Compiled Statutes of 1945, permits manslaughter to be charged in a very simple manner, so that there will be a constant tendency in cases like that at bar to completely ignore the more recent enactments of the legislature and let them become a dead letter. It would seem that the legislature should reconsider the subject with some degree of care, definitely establish the policy that should govern in cases like that before us, and fix a more recognizable rule of guidance for the courts.