**William Ross HAMMER, Appellant (Defendant below),**

v.

**TOWN OF JACKSON, Appellee (Plaintiff below).**

No. 4349.

Supreme Court of Wyoming.

July 18, 1974.

---

1. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 138, 67 L.R.A. 571, 110 Am.St.Rp. 963.

**886**

John T. Pappas, of Vidakovich & Pappas, P. C., Lander, for appellant.

Donald Terry Rogers, Town Atty., Jackson, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Justice McINTYRE delivered the opinion of the court.

The appellant, William Ross Hammer, was convicted in municipal court for two misdemeanor violations of ordinances of the Town of Jackson. One conviction was for driving a motor vehicle while under the influence of intoxicating liquor; the other was for resisting an officer. On appeal to the district court a jury was waived and a trial de novo was had. The convictions were upheld. The case is before us on an appeal by Hammer from his district court convictions.

The trouble in dealing with the appeal is that the appellant and his attorney insist on retrying the case and using as evidence in the retrial the testimony of appellant and his witnesses, instead of the testimony of the prosecution and its witnesses. We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it.[1] This means we need only decide whether there was substantial evidence favorable to the prosecution, without discussing and reviewing such evidence as may have been offered by the defendant.

The errors assigned by appellant for reversal of the district court judgment are these:

1. The defendant did not receive a fair and impartial trial due to the bias and prejudice of the trial judge.

2. The judgment and sentence are contrary to law and a denial of due process of law because (a) the defendant was not advised of his right to a chemical test of his blood, breath or urine when arrested for driving a motor vehicle while under the influence of intoxicating liquor, and (b) the defendant was denied a chemical test of his breath when requested by defendant following his arrest for driving a motor vehicle while under the influence of intoxicating liquor.

3. The conviction of the defendant of the misdemeanor of driving a motor vehicle while under the influence of intoxicating liquor to a degree which rendered him incapable of safely driving a motor vehicle is not supported by competent evidence.

4. The conviction of the defendant of the misdemeanor of resisting an officer is not supported by competent evidence and is contrary to law in denying the de-

---

1. See Stock v. Roebling, Wyo., 459 P.2d 780, 784; and Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 506, reh. den. 177 P.2d 204.

fendant the right of self defense when subjected to police brutality.

### Discussion

■ 1. The appellant cites no case authority, text authority, nor logic to support his proposition that he did not receive a fair and impartial trial due to the bias and prejudice of the trial judge. As we review the record, the defendant had a fair and impartial trial all the way through. Moreover, appellant concedes in his brief that the district court judgment is supported in part by the testimony of two law enforcement officers who appeared on behalf of the town. Appellant merely states that he seriously questions the credibility of this evidence. No lack of credibility is shown, however; and the entire question of credibility was one for the trial judge and is not something for us to pass upon.

■ 2(a) and (b). Although appellant asserts that the judgment and sentence are contrary to law and a denial of due process, nothing is called to our attention from the record and no authority is cited in support of this proposition. We find nothing in the record to support appellant's assertions in 2(a) and 2(b).

The error assigned by appellant in 2(a) and 2(b) is a good example of how the appellant attempts to take the testimony offered on behalf of the defendant, ignoring the evidence favorable to the successful side. The evidence we are bound to accept and believe is that Hammer did not request a breathalizer test or other test of his blood, breath or urine; and that a blood, breath or urine test was never refused to Hammer. There was testimony that the arresting police officer, Thomas Jordan, on his own initiative, made inquiry by radio as to whether the sheriff's office had ampoules for the breathalizer machine. He was informed there were no ampoules available.

■ Appellant cites no authority which requires that a person arrested for the offense of driving while under the influence of intoxicating liquor shall, in every instance, be administered a chemical test of his blood, breath or urine. Nor does appellant cite authority for his contention that, if a test is requested by an arrested person, it has to be given and the failure to give it invalidates the arrest.

■ If the Town of Jackson were seeking to invoke the provisions of the Implied Consent Law [§§ 31–247.1 to 31–247.6, W. S.1957, 1973 Cum.Supp.] in order to suspend appellant's license or to introduce evidence of a chemical test of the appellant's blood, breath or urine, then the Implied Consent Law would apply.[2] Otherwise it has no application in this case.

■ The Implied Consent Law does not require that every person arrested for the offense of driving while under the influence of intoxicating liquor be given a chemical test of his blood, breath or urine. It merely provides that such a person is deemed to have given his consent and provides certain guidelines for the testing in the event that it is used or sought to be used. § 31–247.2(a), W.S.1957, 1973 Cum. Supp. In the instant case the Implied Consent Law was not used nor sought to be used.

■ 3. In assignment of error 3, appellant claims the conviction of defendant for driving a motor vehicle while under the influence of intoxicating liquor is not supported by competent evidence. There is no merit at all in this contention.

There is evidence in the case that, during the night in question, appellant and his companion had been drinking in local bars for approximately five or six hours, and by appellant's admission he had at least six beers to drink in that period of time.

Officer Jordan testified that based upon his observations of appellant and upon the

2. We are not called upon to rule whether or not the Implied Consent Law has any application when a person is charged with driving while under the influence of alcohol in violation of a municipal ordinance, and we make no determination of that point.

failure of the appellant to successfully perform a field sobriety test, in his opinion the appellant was under the influence of intoxicating liquor to the point where it hampered his ability to function normally, particularly with regard to his driving.

Deputy Sheriff Donald Francis, who assisted Officer Jordan in the ultimate arrest of Hammer, also testified that Hammer's speech was slurred; that he had a hard time making decisions and a hard time retaining what was going on; that there was the odor of alcoholic beverages emanating from Hammer; that he observed Hammer walking in an unstable manner; and that in his opinion Hammer was under the influence of an alcoholic beverage.

The arresting officer testified extensively with regard to the degree to which Hammer was under the influence of intoxicating liquor. He testified as to the erratic manner in which the vehicle operated by Hammer was being driven, including the spinning of its rear tires in acceleration and spinning out in nearly a full circle. Hammer admitted that he spun the vehicle around at least 180°.

Officer Jordan also testified he noticed a strong odor of alcoholic beverage as appellant gave him his driver's license; that as the appellant got out of his vehicle he was unsteady and not sure of his balance; as he stood he swayed, and in stepping away from the vehicle he staggered; that appellant's speech was slightly slurred and his train of logic was skipping.

The evidence showed that the appellant attempted to perform a finger-to-nose-test, touched his lower lip and fumbled around his face and found his nose, and while performing the test his heels were not together and his feet were apart. It is apparent from the entire transcript that the appellant was belligerent throughout the entire incident.

On cross-examination, Officer Jordan testified he was sure the appellant was under the influence of intoxicating beverage by watching him walk, from his speech, from the smell of alcoholic beverage on his breath and from the different indications like bloodshot eyes.

Deputy Sheriff Francis testified that he was with the appellant and Officer Jordan when the appellant was being escorted from the police vehicle into the courthouse and he observed the appellant to be walking in an unsteady and unstable manner. He further testified that, based upon the facts he had testified to in his opinion the appellant was under the influence of an alcoholic beverage.

On cross-examination Deputy Francis stated, he had further based his opinion that appellant was under the influence of intoxicating liquor on the facts that appellant was very uncooperative, he was confused, and it took Deputy Francis approximately fifteen minutes to convince appellant that he was going to jail.[3]

The elements of the offense of driving a motor vehicle while under the influence of intoxicating liquor were amply proved and the findings of the trier of fact should not be disturbed.

4. Regarding assignment of error No. 4, we cannot agree that the record reflects any evidence of police brutality. Neither can we agree the conviction is unsupported by competent evidence, nor that it is contrary to law.

The appellant testified, when he saw a red light flashing, he knew there was something wrong; he knew it was a police car; he knew Jordan was a police officer and the police had the right to enforce the laws. Appellant admitted on cross-examination that he knew Officer Jordan had authority and he nevertheless refused to let Jordan put handcuffs on him. He testified

---

3. The Wyoming rule with regard to witnesses testifying as to intoxication is set forth in State v. Cantrell, 64 Wyo. 132, 186 P.2d 539, 546, where the Court held that witnesses may testify as to the defendant's intoxication providing they state the facts on which they base their opinion. This was done by both Officer Jordan and Deputy Sheriff Francis.

further that he knew he did not have the right to make a determination as to whether or not he would go to jail. There was evidence in the case which indicates the arresting officer had difficulty in getting the defendant to move to the rear of his vehicle. At that time the defendant was told he was under arrest. Appellant admitted that he had ahold of Officer Jordan and there was a scuffle.

The appellant related details of the struggle between himself and Jordan, complaining because the officer attempted to use handcuffs. He testified that he got ahold of the policeman and the two of them went to the ground, with the appellant obtaining a necklock on the officer. Appellant said the officer at this time was yelling, "Help! Help! Will somebody help me?" It would appear the defendant thought he was earning Brownie points by getting the better of the officer, if he did indeed do that.

Dr. Weldon T. Richardson, Jr., a dental surgeon, testified he had examined Jordan eleven days before the incident with the appellant and found nothing abnormal with regard to his teeth. He examined Jordan on February 18, 1973, after the incident with appellant, and he noted Jordan had cracked fillings and chipped and cracked enamel on his teeth. The fillings had to be refilled and the spots on his teeth had to be smoothed. Dr. Richardson further testified that the fillings were fractured by a blow and that the injuries were compatible with Jordan's complaints and the history he had given as to how he had received the injuries, i.e. in attempting to arrest and take the appellant into custody.

Dr. David Cook, an internist, examined Jordan on February 28, 1973, after the incident involving appellant, and was given a history by Jordan with regard to the incident.[4] Dr. Cook stated he found a bruise on the left side of Jordan's jaw underneath the ear; red marks in a linear fashion and numbering two or more circumferentially around the neck; a chip in the lower left tooth; a bruise on one knee; that his examination revealed Jordan's neck showed definite finger marks; and that the injuries he observed appeared to be compatible with Jordan's complaint.

There being an abundance of competent evidence to show that appellant was driving a motor vehicle while under the influence of intoxicating liquor; and that the defendant resisted arrest, it cannot be said there was a failure of competent evidence in regard to these matters. We find no reason for not affirming the conviction of the defendant on both charges.

Affirmed.

---

4. According to the testimony of Jordan, he was attacked by appellant and a passenger in appellant's vehicle and choked by the appellant into unconsciousness. He was able to effect the arrest only by reason of the assistance of a bartender and Deputy Sheriff Francis.