THE STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

TOM WILSON,

*Defendant and Appellant.*

(No. 2624;  October 1, 1956;  301 Pac. (2d) 1056)

For the defendant and appellant, the cause was submitted upon the brief of Stanley K. Hathaway of Torrington, Wyoming, and Bertrand V. Tibbels of Scottsbluff, Nebraska and oral argument by Mr. Tibbels.

For the plaintiff and respondent, the cause was submitted upon the brief of George F. Guy, Attorney General, Robert H. McPhillamey, Deputy Attorney General, Howard B. Black, Assistant Attorney General, and Arthur F. Fisher, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. McPhillamey.

300

306

## OPINION

Justice Parker delivered the opinion of the court.

On the night of May 24, 1952, at about eleven o'clock, a collision occurred on U. S. Highway 26, approximately two and four-tenths miles northwest of Torrington, Wyoming, between the automobiles of defendant, who was driving alone, and Robert Snook, who was accompanied by his wife, his daughter of eleven, his son of four, and a baby daughter, Roberta, five months. The impact was severe, the damage to the automobiles was substantital; and the Snook car after it overturned caught fire. In the accident the baby, Roberta, who had been lying on the front seat between her mother and father, was severly injured, was taken to the hospital, and died about one forty-five the following morning.

Defendant was charged with involuntary manslaughter under § 9-205, W.C.S. 1945, providing, "whoever unlawfully kills any human being without malice, expressed or implied * * * involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter * * *." He was convicted and sentenced to a term of four to four and one-half years

in the penitentiary. From this conviction and sentence, defendant has now appealed.

Defendant assigns ninety specifications of error but summarizes the issues under five headings, substantially as follows:

First: Is § 9-205, W.C.S. 1945, unconstitutional as denial of due process in that the terms "unlawful act," "culpable neglect," and "criminal carelessness," are so vague and ambiguous as to constitute no ascertainable standards of guilt?

Second: Is § 10-705; W.C.S. 1945, providing "in any indictment [or information] for manslaughter, it shall be sufficient to charge that the defendant did unlawfully kill the deceased," unconstitutional on the due process ground?

Third: Was denial of defendant's motion to strike information, motion for bill of particulars, or motion for continuance, a deprivation of due process?

Fourth: Did the existence of § 60-138 (re penalties for violations of the motor vehicle act), § 60-413 (re negligent homicide [§ 60-634, Cum. Pocket Supp. 1955] concurrently with § 9-205 (as it applies to involuntary manslaughter) of W.C.S. 1945 amount to a denial of equal protection to defendant?
Fifth: Under the information, was there an issue of fact?

Since each of the issues argued by the defendant relates more or less to the proceedings preliminary to trial, we here note the various steps taken. On May 28, 1952, a criminal complaint against defendant was filed in the justice court of Goshen County, reading in the charging portion as follows:

"* * * then and there unlawfully and feloniously but involuntarily and without malice kill one Roberta

Snook, by then and there driving a motor vehicle while under the influence of intoxicating liquor, thereby feloniously, but involuntarily driving his motor vehicle upon his left side of the road in a southeasterly direction and into an automobile driven by Robert Snook in a northwesterly direction inflicting a mortal wound and injury upon the body of Roberta Snook, said Roberta Snook being a passenger and riding in the car driven by the said Robert Snook, from which mortal wound on the 25th day of May, 1952 the said Roberta Snook, in the County aforesaid, then and there died * * *."

Defendant pleaded not guilty, waived preliminary hearing, was bound over to the district court and there an information identical in charge to that in the justice court was filed. On September 3, 1952, the court granted defendant's oral motion "for leave to withdraw his plea of not guilty and to otherwise plead"; and on October 2, 1952, defendant filed a motion to quash the information, raising substantially the same questions as are now presented in the first four issues. On November 19, 1952, the court overruled the motion to quash, granted the prosecuting attorney leave to amend the information by striking the words "upon his left side of the road in a southeasterly direction" and "in a northwesterly direction"; whereupon on November 20, 1952, an amended information was filed in which the mentioned phrases were omitted. On March 31, 1953, defendant filed a motion to quash the amended information, urging again substantially the same points as before, and successively on the same day filed an abatement and a demurrer, each of which was overruled by the court; whereupon the defendant entered a plea of not guilty on April 22, 1953. The county attorney filed a second amended information, charging that the defendant did "unlawfullykill Roberta Snook, a human being," to which defendant interposed a motion to strike based essen-

tially upon the claim that the information was broad, vague, ambiguous, failed to give defendant notice of the offense charged, and deprived him of due process; and defendant successively filed a motion for bill of particulars, a motion for continuance, a motion to quash, a plea in abatement, and a demurrer, all of which were overruled. In each of these last-named filings, the burden of defendant's complaint was the unconstitutionality of the statutes, primarily because they did not inform the defendant of the gravamen of his act upon which the State relied to prosecute for manslaughter, and because a charge other than manslaughter *might* have been filed under the motor vehicle act against a defendant in like circumstances.

The case thereupon proceeded to trial. Certain of defendant's specifications of error relate to rulings of the court on evidentiary matters and instructions, both of which were inevitably affected by the previously mentioned rulings of the court regarding the information.

This case poses problems which for many reasons are not easy of solution:

(1) Constitutional questions and other legal problems, often intermingled both in discussion and solution, become so inextricably related in this type of prosecution that a disagreement inevitably arises as to the rule of stare decisis on a given point.

(2) Constitutional provisions, such as "due process," are by their very nature nebulous and of doubtful meaning, except as interpreted by judicial decisions which may be considered as precedent because they arise from like or similar situations; and defendant has cited few motor vehicle manslaughter cases— none in point. Moreover, constitutional protection,

extended by philosophical research and reasoning to the ultimate, if uninfluenced by current practical human needs, can often be as destructive of public equities as it is protective of private rights.

(3) In no other state is the crime of involuntary manslaughter defined by the same wording as that in § 9-205, W.C.S. 1945; and, consequently, philosophies, ideas, and decisions emanating from other jurisdictions are never directly in point and are helpful only by analogy. Although the optional style of defining the crime as the killing of a human being "in the commission of some unlawful act, or by any culpable neglect or criminal carelessness" has been obliquely approved by this court, it nevertheless presents a situation not wholly satisfactory to many of the lawyers, jurists, and legal writers who have had occasion to consider the act.

Defendant's contentions that §§ 9-205 and 10-705, W.C.S. 1945, are unconstitutional, that his motion for a bill of particulars should have been granted, and that the information failed to tender an issue of fact, present problems which are interrelated and, for practical purposes, inseparable. If the manslaughter statute by its statement of "involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness" is, as defendant contends, alternative and thereby so vague and ambiguous as to constitute *no ascertainable standards of guilt*, then the unconstitutionality of § 9-205, W.C.S. 1945, as it relates to involuntary manslaughter follows as a matter of course; and this likewise would be true of § 10-705, W.C.S. 1945. On the other hand, if a bill of particulars is in order and allowable on demand, then that fact alone would tend to cure any claimed unconstitutionality of the statutes. This sim-

ultaneously would permit the forming of an issue under the information.

The constitutionality of §§ 9-205 and 10-705, W.C.S. 1945, has heretofore been determined by this court both directly and by dicta. It therefore becomes unnecessary for us to discuss that subject, except by reference to decided cases and to supporting precedent. For the reasons hereafter stated, we are unconvinced that our former decisions were erroneous; and we see no occasion to now reverse them.

In State v. McComb, 33 Wyo. 346, 239 P. 526, 531, 41 A.L.R. 717, we stated that:

"It is assigned as error that the court overruled defendant's motion for arrest of judgment on the ground that the information herein is insufficient because it merely alleges that the defendant 'did then and there willfully and unlawfully kill one Lavoyle Duggins, the said Lavoyle Duggins being then and there a human being,' without setting out the facts by which the unlawful killing was done, and it is insisted that such facts should be alleged. Section 7464, W.C.S. 1920, provides that in an indictment for manslaughter 'it shall be sufficient to charge that the defendant did unlawfully kill the deceased.' That provision was probably taken from Ohio, and an information like that in the case at bar has been held sufficient in at least three different cases decided by the Supreme Court of that state. Wolf v. State, 19 Ohio St. 248; Williams v. State, 35 Ohio St. 175; State v. Shaeffer, supra [96 Ohio St. 215, 117 N.E. 220, L.R.A. 1918 B, 945]. The foregoing assignment of error should, we think, be overruled."

In State v. Cantrell, 64 Wyo. 132, 186 P.2d 539, 542, it is stated:

"There can be no doubt at all that the information charged the crime of manslaughter properly for Section 33-417, W.R.S. 1931, now Section 10-705, W.C.S. 1945 provides that: 'In any indictment for

manslaughter, it shall be sufficient to charge that the defendant did unlawfully kill the deceased'. The provisions of the Code of Criminal Procedure relative to charging a crime by indictment of course apply as well to prosecution by information. Section 10-613, W.C.S. 1945, W.R.S. 1931, Section 33-431. In State v. McComb, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717, this court held that an information couched in practically identical language with that used in the case at bar was sufficient without setting out the facts by which the unlawful killing was accomplished despite the contention that such facts should have been alleged."

In State v. Dobbs, 70 Wyo. 26, 244 P.2d 280, 281, it is stated:

"The information in this case did not set out the manner and means by which the manslaughter was effected and it is contended by defendant that he had a constitutional right to be informed of the means by which the crime charged was accomplished. We have passed on that question twice, namely, in the case of State v. McComb, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717, and State v. Cantrell, 64 Wyo. 132, 186 P.2d 539. Section 10-705, W.C.S. 1945, provides that 'in any indictment for manslaughter, it shall be sufficient to charge that the defendant did unlawfully kill the deceased.' In view of this statutory provision, we held that an information in conformity with the statute is sufficient. In order to hold otherwise, we would be compelled to hold that the statute above mentioned is unconstitutional. We are not inclined to do so and the foregoing objection must accordingly be overruled. * * *"

It will be noted from these statements that (a) the validity of the statutes in the light of the constitutional provision was in fact considered in all three cases and (b) the constitutional questions and other relevant legal problems therein discussed were inevitably commingled and necessarily discussed concurrently and coincidently.

It may at this time be appropriate to give our views of the holdings of two Wyoming cases which defense counsel seem to think are in conflict with the three above-noted cases, or at least with State v. Dobbs, supra.

Defendant contends that State v. A. H. Read Co., 33 Wyo. 387, 240 P.208 (dealing with a corporation's alleged violation of a labor law), holds "in criminal cases the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' " We have no criticism of this principle or its amplification by the court in the Read case. However, the statements therein, as applied to the instant situation, are so general in nature as to be of little assistance, except by way of analogy—interpretation of which is a prerogative of the court.

State v. Kusel, 29 Wyo. 287, 213 P. 367, 368, 369, also quoted by defendant as supporting the above principle of law, is likewise general in scope and additionally discusses an original information, which, attempting to charge burglary, "fails to charge the attempt requisite under [the statute] * * * in order to constitute a crime."

The nature of the holdings in the Kusel case is illustrated by the following excerpts from the opinion:

"* * * if the jurisdiction of the district court of Laramie county depended entirely, or mainly, on the allegations contained in the original information, or if all essential allegations are necessary in the first instance for that purpose, then since that information failed to charge a crime, it would be difficult to conceive how the court, upon the transfer of the case, acquired any such jurisdiction. * * *

\* \* \* \* \*

"But in order to enable a court of general jurisdiction to proceed in the cause in its earlier stages, it is not

essential, in cases such as the case at bar, that the information or complaint before it be perfect or state a cause of action. * * * "

At one point in his brief, defendant quoted (with emphasis from the Kusel case as follows:

" ' * * * But we may suggest that a distinction may well be drawn, without splitting hairs, between the essential things and facts necessary to be before the court at the early stages of a criminal proceeding and those before it when it renders judgment against the accused. The power to proceed in a cause and permit, for instance, the making of an amendment appears to be, in its nature, a power different from the power to render a judgment upon an information that states no crime. In the one case, the power relates to procedure; in the other to a matter of substance. *Further, our Constitution guarantees to the defendant the right to be informed of the nature and cause of the accusation, and to have a copy thereof. Const., art. 1 § 10. And had the trial of this case proceeded to the end, upon the original information, it might well be held, even in a collateral proceeding, that no valid judgment could be rendered against him.* A defendant, in fact, should, under the Constitution, be informed of the accusation against him, at least a reasonable time before he is actually put upon trial.' "

We agree that the quoted statement standing alone, or taken out of context, is correct; but it is unconvincing in the instant case since in the Kusel information the *attempt,* a requisite of the crime, was omitted. It is also significant to note that the conviction of Kusel was affirmed. Accordingly, the case not being parallel with the instant situation, or the facts, is unpersuasive.

We are likewise unimpressed with numerous other cases cited by defendant which are either general in their scope or dissimilar on the facts. It serves no useful purpose to analyze and distinguish them in detail.

In the light of the unequivocal pronouncements of this court in State v. McComb, State v. Cantrell, and State v. Dobbs, supra, it is in order to review (a) the statutes and decisions of the state of origin of § 10-705, W.C.S., 1945, and (b) the precedents both at common law and under the statutes for the short-form manslaughter-information.

In State v. Schaeffer, 96 Ohio St. 215, 117 N.E. 220, 222, 223, 228, L.R.A. 1918 B. 945, a case in which the defendant was charged under the short-form manslaughter-statute that he " 'did unlawfully kill Adelbert Chaky * * *', " the defendant attempted to force the state to elect under which motor vehicle statute it would rely and insisted that the indictment did not set out facts sufficient to constitute a charge of manslaughter. The court said:

"The fair trial guaranteed by the Constitution and law of the land requires that it be fair, not only to the defendant, but fair likewise to the plaintiff, the state, the people of Ohio. The matter of election has been before this court so often that it would seem there should be no doubt as to the rights of parties under a long-established rule of criminal procedure. One of the earliest cases is that of Bailey v. State of Ohio, 4 Ohio St. 441. * * *

" 'When an indictment charges two or more distinct offenses, differing in their nature, or arising out of distinct and different transactions, the court may compel the prosecutor to elect upon which charge he will proceed. But such election will not be required to be made, where the several charges in the indictment relate to the same transaction, or are simple variations or modifications of the same charge, with a view of meeting the proof.'

"Manifestly there was but one transaction before the court in the case at bar. There was but one offense charged, and that was manslaughter; and there was also only one unlawful act, though one

statute may have designated it in one form and another statute may have designated it in another. We hold that, under the conceded facts of this case and the settled rule of criminal procedure in Ohio, it was error against the state to require the prosecutor to elect. * * *

\* \* \* \* \*

"* * * it was an indictment for manslaughter charged in the short form, as provided in section 13583, General Code. This is the form that has long been in use in Ohio, and has been approved repeatedly by this court as sufficiently charging the offense of manslaughter. Manslaughter, as known in Ohio, is defined as follows:

" 'That if any person shall unlawfully kill another without malice, either upon a sudden quarrel or unintentionally, while the slayer is in the commission of some unlawful act, every such person shall be deemed guilty of manslaughter,' etc. 33 O.L. 33; 1 S. & C. p. 403.

"This is the old form of the statute, prior to revision and codification, and has been approved by this court as a correct definition of manslaughter under the present statute. Johnson v. State of Ohio, 66 Ohio St. 59, 63, 63 N.E. 607, 61 L.R.A. 277, 90 Am.St.Rep. 564. It was further held in the Johnson Case that the unlawful act must be one prohibited by the statute of Ohio. The Court of Appeals rightfully held the indictment good.

\* \* \* \* \*

" * * * His conduct in the operation of this car, not only as to speed, but in being on the left side, instead of the right side, of the street, was wholly inexcusable, and shows a reckless and wanton disregard of all thought for the safety and lives of these children and the public generally."

The constitutional problem motivating the court's decision is disclosed in the second syllabus (drafted by the court itself) where ,despite the fact that in

the opinion the constitutional problem is mentioned only peripherally, the syllabus states:

" * * * The short form of indictment provided in section 13583, General Code, is not in conflict with the *constitutional guaranty* that the accused shall be advised of 'the nature and cause of the accusation against him.' " (Emphasis supplied.)

We note further in the Schaeffer case several significant discussions by the court covering (a) the requirement of fairness to the state as well as to the defendant, (b) the positive holding that the short-form indictment is good, and (c) the reference to the acts of defendant as "wholly inexcusable," and showing a "reckless and wanton disregard of all thought of safety and lives."

This latter reference calls to mind the statement of Judge Blume in State v. McComb, 33 Wyo. 239 P. 526, 528, 41 A.L.R. 717:

" * * * when our statute provided that the negligence must be culpable or criminal—terms evidently used synonymously—it would seem that it meant to provide specifically that the unlawful act relied on in manslaughter, must, if it consists of negligence, be more than ordinary negligence, and must be culpable or criminal in its nature. * * * "

A review of manslaughter statutes in the different states indicates that there are few with identical wording. Further, there is no uniformity of the particular unlawful acts essential to a valid charge. Of the twenty-three states which have some type of short-form manslaughter-indictment statute, many follow a uniform law and require merely the following wording of the information: "A.B. unlawfully killed C.D.." Some states have short-form statutes similar in many respects to that in Wyoming and others have short-form statutes, of different types, difficult of

classification. Twenty-five states make no provision, or, at least, no effective provision, for short-form indictment.

Moreland in "A Rationale of Criminal Negligence" 1944, p. 124 ff., makes a valuable analysis of the various manslaughter statutes and their underlying philosophies, which, though not especially significant in this case, points up the need for a comprehensive review of the law in this field.

Notwitstanding the lack of uniformity between the states in both the substantive and procedural law relating to manslaughter, a basic adherence to the common law definition of manslaughter may be perceived in both the statutes and the case law in most jurisdictions. This definition is well set out in 1 Warren on Homicide (perm.ed. 1938) 420, 421:

"Involuntary manslaughter embraces a killing without malice and intent, in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily injury, or in doing negligently some lawful act, or in omitting to perform a legal duty. It is the unlawful killing of a human being without malice, either expressed or implied, and without intent to kill or inflict the injury causing death, committed accidentally in the commission of some unlawful act not felonious, or in the improper or negligent performance of an act lawful in itself. This is the common-law definition * * *."

It will be observed from Warren's statement that manslaughter even at common law was a multi-phase crime which could grow out of different types of acts —as under the Wyoming statute. With that in mind, it may be well to mention a few of the numerous cases which indicate the current trend and the general influence of the common law on the subject.

An interesting case is Neusbaum v. State, 156 Maryland 149, 143 A. 872, 875, in which the defendant

in a motor vehicle manslaughter case was indicted under a short-form indictment statute (relating to both murder and manslaughter). He was convicted and appealed on the ground, among others, that:

" * * * the indictment fails to identify and describe the offense charged * * * with such precision and particularly as would apprise * * * of the specific crime of which * * * accused, and that therefore it was in violation of article 21, Maryland Bill of Rights, which provides that 'in all criminal prosecutions, every man hath a right to be informed of the accusation against him' * * *."

The court held that, subject to a requirement for a bill of particulars, which will later be discussed in some detail herein, the indictment did not violate the constitutional provision.

In Cowan v. State, 140 Neb. 837, 2 N.W.2d 111, 113, the Nebraska court, discussing a motor vehicle manslaughter conviction on an indictment under a short-form statute charging that defendant did "unlawfully and feloniously kill and slay" deceased, said:

" * * * Due process of law requires only that the accused be given sufficient notice of the nature of the charge against him in order that he may prepare a defense and plead the judgment as a bar to any subsequent prosecution for the same offense. The information in the instant case charges that on or about the 23rd day of April, 1940, Floyd L. Cowan, in the county of Douglas and state of Nebraska, did then and there one Ralph W. Sandell unlawfully and feloniously kill and slay. Any person with a reasonable amount of intelligence would have no difficulty in knowing the nature and cause of the accusation against him. There is no sound argument against a simple and plain statement of the charge. Justice ought not to be sacrificed on the altar of formalism. * * * "

The Cowan case was approved by the Nebraska court in Vaca v. State, 150 Neb. 516, 34 N.W.2d 873.

Although, as defendant has pointed out, this court has not previously stated in so many words that § 10-705, W.C.S. 1945, is constitutional, we have indicated that an information drafted in accordance with that statute is sufficient. See Gustavenson v. State, 10 Wyo. 300, 68 P. 1006; State v. McComb, 33 Wyo. 346, 239 P. 526, 41 A.L.R. 717; State v. Cantrell, 64 Wyo. 132, 186 P.2d 539. Carrying this view a step further and applying it specifically to motor vehicle death situations, we find the cases of Neusbaum v. State, Cowan v. State, and Vaca v. State, supra, to be most persuasive. In fact, any cited opinions which seem to be contrary thereto are upon examination found to be distinguishable as arising in states which have not by law provided for the short-form information.

Statutes will not be declared unconstitutional unless the unconstitutionality is clear. See West's Wyoming Digest, Constitutional Law, Key Number 48. This rule takes on added meaning when the party urging the unconstitutionality of the statutes cites no precedents which are similar on the facts but relies solely on reasoning by analogy.

We think § 10-705, W.C.S. 1945, does not violate the constitutional provisions guaranteeing due process of law.

Notwithstanding our views as to the validity of this statute and even though a short-form information drawn thereunder is initially sufficient, we are impressed by defendant's demand for a bill of particulars. Such demand was especially significant in this case because the wording of the information had, in fact, undergone various changes constituting an evolution from the time of the first filing to the date of the trial. It is reasonable to assume that defend-

ant was not only uninformed but perhaps confused as to the precise theory under which the State would prosecute the manslaughter charge against him, i.e., whether the claim would be that the homicide resulted from his intoxication, from his negligence in driving on the left side of the road, from his carelessness in coming upon the highway, or from some other improper act.

In Neusbaum v. State, supra, the court said (p. 876):

"The question [whether it was necessary to allege the manner and means of the killing] is by no means free from doubt, for, while ordinarily the manner and means of death are mere incidents and form no part of the crime itself, yet it is quite possible that cases might occur when the bald charge that one at a certain time at a certain city feloniously killed another would afford him practically no information upon which he might base his defense. If in fact he had killed the person named in the indictment, he would naturally know of the circumstances, but, if he had not, it might become of the utmost importance for him to know how and by what means the homicide occurred, and the indictment would furnish him no information as to those facts at all.

"But that difficulty is met to some extent by the rule which allows the defendant the right to demand of the state the particulars of the offense with which he is charged where the indictment is so general that it discloses no information sufficient to afford him a fair and reasonable opportunity to meet it and defend himself, Wharton Cr. Proc. par. 1637, and that right was recognized by this court in Lanasa v. State, 109 Md. 612, 71 A. 1058, and, while such a motion or demand is addressed to the discretion of the court, nevertheless it is a sound discretion and may be reviewed where there is a gross abuse of it, resulting in injury to the accused."

In the instant case, we can appreciate the trial court's denial of defendant's motion for a bill of particulars, since § 10-705, W.C.S. 1945, *might* be interpreted as saying that under no circumstances are any words necessary other than that "the defendant did unlawfully kill the deceased." We think such statute means that the specified wording is sufficient *in the first instance,* but the application of the statutory provisions after the initial filing and during the trial should not be considered to be restrictive so as to preclude the providing of specific information in the interest of justice.

It has been said that ordinarily the appellate court will not review or revise a trial court's refusal to grant a bill of particulars. 24 C.J.S., Criminal Law § 1862. However, this rule has been tempered considerably under constitutional provisions granting accused the right to be fully informed of the nature of his accusation. See 27 Am.Jur., Indictments and Informations § 112. Moreover, the trial court's exercise of discretion must be most carefully examined in a situation like the one at bar where there has, in fact, been a metamorphosis of the information.

This defendant said he was misled. We do not know whether he was or not, nor do we think it was possible for the trial court to be certain. If defendant had been given the benefit of the doubt, as we think he should have been, the motion for the bill of particulars would have been granted.

The State *might* thereafter well have proceeded under § 10-714, W.C.S. 1945, relating to "joinder of several offenses growing out of same transaction" if it had so desired, thereby assuring that each juror, in voting either to convict or acquit, would have had in

mind the same improper act or combination of acts of defendant.

Inasmuch as the motion for the bill of particulars should have been granted in this case, it is unnecessary to discuss the fourth issue raised by defendant, the denial of equal protection to defendant because of the existence of several penalty statutes covering the same offense, i.e., the nullification of § 9-205, W.C.S. 1945, by other penalty statutes (§ 60-138, § 60-413 [§ 60-634, Cum. Pocket Supp. 1955], W.C.S. 1945, relating to motor vehicles). In passing it may be noted that in State v. Faulkner, Wyo., 292 P.2d 1045, the defendant presented essentially the same contention, i.e., that various statutes, carrying different penalties, condemned the same behavior but provided no legislative guide to indicate the circumstances under which each of these statutes should apply.

Neither our rejection of defendant's views on this phase of the case nor our holding that both §§ 9-205 and 10-705, W.C.S. 1945, are constitutional should be taken as an indication that we approve the present Wyoming statutes relating to (a) involuntary manslaughter, (b) the short-form indictment therefor, and (c) motor vehicle homicide. These statutes have often been mentioned by jurists and legal writers, usually with some criticism either express or implied.

Judge Blume in his concurring opinion in State v. Cantrell, 64 Wyo. 132, 186 P.2d 539, 548, said:

" * * * As pointed out in the opinion, we have now three different statutes dealing with the killing of a human being as the result of unlawful driving of an automobile—the manslaughter statute and two special statutes. It is impossible to determine definitely as to whether or not the legislature when it passed these special statutes intended that they should govern in all cases when a death occurs as the result of improper

driving of an automobile. Particularly is this true in view of the rule that repeals by implication are not favored. Nor is it even possible to determine definitely which of these special statutes should govern. Section 10-705, Wyoming Compiled Statutes of 1945, permits manslaughter to be charged in a very simple manner, so that there will be a constant tendency in cases like that at bar to completely ignore the more recent enactments of the legislature and let them become a dead letter. It would seem that the legislature should reconsider the subject with some degree of care, definitely establish the policy that should govern in cases like that before us, and fix a more recognizable rule of guidance for the courts."

In discussing § 9-205, W.C.S. 1945, Moreland in "A Rationale of Criminal Negligence" (1944), p. 126, says:

" * * * A carelessly drawn statute in Wyoming provides that an unintentional homicide in the commission of an unlawful act or by culpable negligence or criminal carelessness is manslaughter."

Without the necessity of further quotations, suffice to say that various interested persons, competent in such matters, have, with justification, raised questions regarding the legislature's intent in (a) using alternative, similar terms to define involuntary manslaughter in § 9-205, W.C.S. 1945, and (b) passing and retaining two other statutes (§ 60-138 and § 60-413 [§ 60-634, Cum. Pocket Supp. 1955], W.C.S. 1945), each referring to death caused by unlawful automobile operation — with no *correlation* of these statutes and no *directions* to enforcement officials prescribing the situations in which each statute is to be applied. Such questions have tended to cause confusion in interpretation of the statutes and have precipitated justified criticisms of the ambiguity. Neither these criticisms nor the views expressed in defendant's brief convince

us of the unconstitutionality of the statutes., but we are of the definite opinion that for the best administration of such negligent homicide law a modernization of the statutes is indicated. This can be accomplished only after a comprehensive analysis of all existing law, both general and statutory.

The legislature will undoubtedly wish to study this matter with a view to consolidating and modernizing the criminal statutes on this subject. Meanwhile, the existing legislation, though in need of improvement, complies with the basic requirements allowing a defendant a fair trial.

. For failure to grant defendant's motion requesting a bill of particulars, the judgment below is reversed; and a new trial is ordered.

Reversed and new trial ordered.