**Margaret Martin HILDEBRAND, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 3930.**

Supreme Court of Wyoming.

Dec. 14, 1971.

J. Patrick Hand, Douglas, for appellant.

Clarence A. Brimmer, Atty. Gen., Robert N. Chaffin, Special Asst. Atty. Gen., Cheyenne, Frank J. Jones, County Atty., Wheatland, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

The defendant, Margaret Martin Hildebrand, was tried on an amended information dated February 21, 1969, containing eighteen counts and charging the defendant in each count with obtaining money under false pretenses. With the exception of one count, number 8, on which the jury found defendant not guilty, the defendant was convicted on all of the remaining counts. Thereafter a judgment and sen-

tence was rendered on all of the seventeen remaining counts and the defendant appeals.

By way of background, it is shown without dispute that the defendant was born in Ireland and went to the tenth grade. At the probable age of nineteen she married one Mr. Martinez in September 1944, who was then serving as a member of the United States forces and who was killed while in the service in the year 1954. At the time of that marriage the defendant came to the United States. After the death of Martinez the defendant continued to reside at Guernsey, in Platte County, Wyoming, and over the period from 1954 to late in the year 1964 the defendant had married and divorced in turn Tom Atwood, Dave Cohee, and Edward Martin. As a result of her marriages the defendant had several children. On January 3, 1962, eight of her children were living with her, and other than an allowance to the family paid monthly by the Veterans Administration and Social Security, which was taken into consideration on the last date mentioned when the defendant applied to the Platte County Welfare Department for welfare, the family had received no support from the defendant's previous husbands and there was no other income or resources.

Under date of April 12, 1962, the defendant was notified that her application for welfare had been approved and a grant was made commencing on April 12, 1962. The printed form of the application, among other things, contained a statement reading as follows:

"I agree to furnish any information that the County Welfare Department may require and also agree to notify the County Welfare Department if any changes occur in my living status, if I or my family become possessed of any additional property, resources or income, or dispose of any property or resources."

Also, the notice of the grant contained advice to the defendant that she was to give full information to the case worker of the county welfare department and that the amount of her grant "is determined by the report received from [by] the Welfare Department." In this connection it is also pointed out that § 42–21, W.S.1957—which was later twice amended but which amendments were not in force during the times herein—provided as follows:

"If any recipient of assistance under the provisions of this act shall become possessed of any property, income or resources during the continuance of such assistance he shall immediately notify the county department of the county in which he resides of the receipt or possession of such property, income or resources. The county department may, after investigation, take the necessary action to cancel or modify the amount of assistance in accordance with the circumstances of the recipient."

Following this, although the date is confusing, it is disclosed that in December 1962 the defendant became acquainted with one John Hildebrand, then single, who thereafter became a very good friend of the family and helped out financially from time to time up to the time when the defendant and Hildebrand were married on May 12, 1968. That marriage, however, was of short duration.

The defendant concedes in her testimony that none of the contributions made by John Hildebrand were ever reported to the welfare department by her when received or by John Hildebrand, and according to the department it did not become aware of that fact until it came to light as the result of a discussion on June 19, 1968, between John Hildebrand and the prosecuting attorney concerning the obtaining of a divorce. As the result of that conference the prosecuting attorney came into possession of a number of checks in varying amounts commencing on December 16, 1963, and ending on March 18, 1968, which had been signed by John Hildebrand and with one exception made payable to the defendant. All, however, were endorsed by the defendant. Thereupon the case worker obviously had gathered the information with respect to

the Hildebrand checks and then undertook to correlate the amounts represented by those checks and the amounts represented by the county warrant for welfare during the months involved, and upon that basis it is then asserted that the welfare department had made overpayment totaling the sum of $1742. Following this the defendant was charged with having obtained the alleged overpayments by false pretenses, and we have heretofore mentioned the outcome of the trial.

Reverting to the claims of error relied upon by the defendant, we will mention at the outset that we have encountered considerable difficulty in undertaking to set forth in a succinct and understandable fashion the salient points involved. That has come about for the reason that the defendant in her brief proceeds first to state three general propositions practically covering the entire field and then goes further and by way of innumerable supplemental assignments raises a plethora of constitutional and other questions of law which in most instances are not satisfactorily developed by cogent authority or argument and to us are quite confusing. For such reason we are not impelled to consider each and every point raised and will not do so. Notwithstanding, we are persuaded after a careful analysis of the record that error is present in the proceedings and we are of the view that the defendant as a result has not received the fair trial to which she was entitled and justice was not served. Consequently the case must be reversed. In doing so we keep in mind that another trial may be had and we will therefore avoid interfering with the proceeding where that is possible. Necessarily, however, we shall give consideration to certain of the significant points raised by the defendant.

## THE QUESTION OF JURISDICTION

It is contended by the defendant that neither the justice of the peace nor the district court had jurisdiction of the case. Basically, and aside from the constitutional questions raised in this connection, the argument is that the only remedy available was that afforded by the provisions of the Public Welfare Act of the State of Wyoming, §§ 42–1—42–46, W.S.1957 (now the Public Assistance and Social Services Act of the State of Wyoming, §§ 42–1 to 42–80, W.S.1957, 1971 Cum.Supp., which was not effective at the time of this proceeding), which would be on the civil side, and that the complaint and the amended information will not lie under the provisions of § 6–38, W.S.1957. We find no merit in the contentions.

The pertinent provisions of § 6–38 relating to a felony, which is here charged, provide in part:

"If any person or persons shall knowingly and designedly, by false pretense or pretenses, obtain from any other person or persons any choses in action, [or] money * * * with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction, where the value of such chose in action, [or] money * * * shall be twenty-five dollars or more, shall be imprisoned in the penitentiary for a period not more than ten years. * * *"

 At the outset we are impressed by the fact that the applicable statutes of Wyoming pertaining to welfare make no mention of the fact that certain conduct in connection with income constitutes a crime and such statutes, unlike those of other states, have not as yet prescribed a procedure whereby the recipients of welfare may be prosecuted criminally. The Manual of Public Assistance Policies (DPW-Wyo.), however, in augmenting the statutory provisions goes somewhat further in that it gives recognition of possible criminal action for fraud in obtaining welfare funds and what must be proved in order to be successful, but it also fails to prescribe what procedure should be followed. It does, however, give every indication that an action may be commenced on the criminal side or commenced as a civil action, and we agree. Either remedy is not exclu-

sive. To demonstrate the correctness of such a holding we need only refer to this court's holding in State v. Cantrell, 64 Wyo. 132, 186 P.2d 539, which fully considered a similar question even though it dealt with a case wherein an accused had been convicted of manslaughter under the provisions of the Criminal Code, § 9–205, W.C.S.1945 (now § 6–58, W.S.1957). There was in effect at the time a comprehensive act regulating the operation of motor vehicles upon the highway, including the crime of negligent homicide, § 60–413, W.C.S.1945 (now § 31–232(a) and (b), W.S.1957, C.1967). The critical question was whether or not the motor vehicle law by those provisions had repealed § 9–205, supra. It was held that the said section last mentioned had not been repealed because of some imperfections in § 60–413, supra, and thus it was proper to prosecute the charge of manslaughter under § 9–205. That concept was again considered at length in State v. Wilson, 76 Wyo. 297, 301 P.2d 1056, but the court nevertheless adhered to the rule. Although those cases were much more complicated than the instant case, we are constrained under the circumstances presented here to hold that the court had jurisdiction under the provisions of § 6–38, W.S.1957. We are further of the view that the raising by defendant of the provisions of § 6–34, W.S.1957, which relates to the use of false statements in writing to obtain property or credit, as constituting the applicable statute under which the prosecution should have been brought is without merit for the reason the circumstances do not fall within those provisions.

## MULTIPLICITY

We have mentioned that the case came on for trial on the amended information containing eighteen counts which was filed on February 21, 1969. That occurred subsequent to the time the Wyoming Rules of Criminal Procedure became effective and the prosecuting attorney, in reliance upon Rule 9(c), which authorizes an information to be amended in form or substance without leave of the court before the defendant

pleads, proceeded to make the amendment. By the amendment the counts contained in a previous information were increased from nine to eighteen, which in all respects were identical to the nine counts except for the insertion of different dates and amounts based upon the John Hildebrand checks.

■ Inasmuch as the defendant filed no motion attacking the information, and other than the matter of jurisdiction or the failure to charge a crime which was open but which we concluded was without merit, we must also hold that defendant waived an attack upon the amended information on the ground of multiplicity. See Rule 16(b), W.R.Cr.P. Nevertheless, the defendant insists that she was prejudiced by the use of innumerable counts and that causes us much concern. We have pondered long on the complexities of this question. The State, relying upon Rule 9, W.R.Cr.P., seems to take it for granted that it was perfectly proper to utilize all of the eighteen counts, which was mostly repetitious in charging false pretenses, and the defendant is of little help. Other than being guided to some extent by general legal principles, our study because it deals with a hybrid case has yet to discover authorities pointing convincingly to a clear and reasonable answer to the problem. In view of the fact that the case may be retried, it appears best to refrain from deciding the point as the case now stands but to admonish the State to give further consideration to use of the amended information on retrial.

While we do not intimate or should not be taken to indicate that the amended information is replete with multiplicity, the comments of 1 Wright, Federal Practice and Procedure, § 142, p. 311 (1969), are of interest, wherein it is stated:

"The vice of multiplicity is that it may lead to multiple sentences for the same offense, though for this there are remedies, and that 'the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant

has committed not one but several crimes.' It remains permissible to charge a single offense in several counts, but as stated in the Advisory Committee Note to Rule 7(c), the rules are intended to discourage that practice."

## EXHIBIT 1

■ The case worker prepared for use at the trial Exhibit 1 wherein she placed under three separate columns the amounts represented by the checks of John Hildebrand, the amounts received from the ADC grant, and claimed overpayments of ADC funds, all correlated to the separate eighteen counts. The record discloses that the exhibit at the opening of the trial was placed upon the wall in plain view of the jury and used by the case worker in her testimony before the exhibit was even offered and received in evidence. While it is true that no objection was voiced to this flagrant impropriety and no objection was voiced until the exhibit was offered, it seems to us that harm had already occurred and permeated the whole of the trial. As we view it, such conduct in even getting the exhibit before the jury with the representation that an "overpayment" had been established, which was not true, was clearly erroneous. We agree with the defendant that the heading of the third column was nothing more than an unauthorized conclusion of the case worker which was inadmissible.

In the first instance, the case worker by her own admission recognized that she had no authority to adjust or terminate the grant and her only authority was to recommend to the proper authorities that such action be taken. There is no evidence that such a recommendation was made or that it was acted upon by the proper authorities. The case worker, for her purposes, simply assumed that such was a fact. The jury then, as reflected by the record, was surely led to believe that such an overpayment had been made by the welfare department as the result of wrongful action of the defendant and the jury thereupon concluded that the defendant by false pretenses had obtained some $1612 from the welfare department to which she was not entitled. The verdict reflects that it was prompted in a large measure by simply performing a mathematical exercise in order to reach its result.

In other words, because of the State's presentation, we are saying that the jury could not make and did not make a meaningful evaluation of the evidence pertaining to the critical question of the effect, if any, of the eligibility of the defendant to receive financial aid under the ADC program in order to determine what claimed "overpayment" resulted from the contributions of John Hildebrand. That is rather well demonstrated by the verdict on Count 4 in the sum of $25 when the case worker, the director, and the assistant administrator of social services were shown to be in disagreement as to what amount should be disregarded as income, when according to the testimony it might range from $20 to $25 per family unit. The director also testified that where a gift—and John Hildebrand said he intended a gift—exceeds an amount of say $50, the problem would probably have to be submitted to the state department for final decision, which was not done.

In addition to this uncertainty the assistant administrator testified that he "believed the regulation says income is any money received from any source." That is a loose statement and perhaps somewhat out of context but nevertheless when we test that testimony by the provisions contained in Volume 1 of the Manual of Public Assistance Policies, § 434.412, p. 12 (DPW-Wyo.), it is of questionable probity. The manual in the section mentioned defines the word "income" to be:

"Income includes all monies received from employment, business, farming, investments, trusts, support or alimony payment, pensions, OASDI, or other benefit payments, etc. The amount of money or kind which is available to an applicant or recipient within a specified

time and is regular and predictable enough to contribute appreciably towards meeting his budgeted needs shall be considered as income."

Should resort be had to the rule of ejusdem generis, and particularly so because this is a criminal case, it would seem that the language "or other benefit payments, etc." would add nothing to the specifics and thus would not reach the John Hildebrand contributions. However, we do not deem it necessary to decide the point and for that reason we do not do so.

It is sufficient to say that there is uncertainty in the evidence, and inasmuch as we have heretofore held that the trial court's ruling on Exhibit 1 was erroneous we also hold that the defendant's substantial rights were adversely affected thereby and consequently the ruling was not only erroneous but was prejudicial.

Reversed.